## Edward Smorawski, by Theodoria Smorawski, Appellee, v. Chicago City Railway Company, Appellant.

## Gen. No. 23,768.

1. APPEAL AND ERROR, § 1411*—*when judgment not disturbed.* In an action to recover for personal injuries, where the evidence, though conflicting, is sufficient to support the verdict, a judgment for plaintiff will not be interfered with.

2. CARRIERS—*what care required to protect child found riding on steps of street car.* Where the conductor of a street car sees a child less than 7 years old riding on the step, he must endeavor reasonably to protect him against his own indiscretion.

3. CARRIERS—*when evidence supports verdict for injuries received by child found riding on street car while attempting to alight.* Evidence that the conductor of a street car, on seeing plaintiff, a child under 7 years of age, standing· on the step of the car as it was moving, stamped his foot and ordered plaintiff to get off, whereupon plaintiff attempted to alight and, in so doing, fell and was injured, is sufficient to support a verdict for plaintiff.

4. DAMAGES, § 120*—*when not excessive.* A verdict of $2,000 is not excessive where the injuries received were a contusion of the head, stunning plaintiff, and abrasions and contusions of the knees and elbow, and will result in plaintiff having a wryneck.

Appeal from the Superior Court of Cook county; the Hon. JOHN J. SULLIVAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1917. Affirmed. Opinion filed July 10, 1918.

C. L. MAHONY and WATSON J. FERRY, for appellant; W. W. GURLEY and JOHN R. GUILLIAMS, of counsel.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

S. P. Douthart and Fred C. Smith, for appellee.

Mr. Justice Taylor delivered the opinion of the court.

Edward Smorawski, a minor, having been injured by falling from a street car, brought suit, by his next friend (hereinafter called plaintiff), against the defendant, the Chicago City Railway Company. The cause was tried twice. At the first trial the plaintiff recovered a verdict which, on motion for a new trial, was set aside. At the second trial plaintiff recovered a verdict and judgment for the sum of $2,000. This appeal is taken therefrom.

The plaintiff, at the time of the accident, Sunday, July 12, 1914, was a child between 6 and 7 years of age who lived with his parents at 4750 Racine avenue, Chicago. During the week preceding the accident he had been at his uncle's in the town of Pullman and, on the day of the accident, accompanied by his uncle, about 11 o'clock in the forenoon, returned to his home, 4750 Racine avenue. The uncle shortly afterwards, about 3 o'clock in the afternoon, started back to his home in Pullman. The testimony of the plaintiff is that some time the same afternoon he started to go back to Pullman to see his uncle and went to the intersection of Racine avenue and 47th street to board a southbound car for that purpose. There is some conflict in the evidence as to the time when the plaintiff boarded the street car and when the accident occurred. The variance is from 4 o'clock in the afternoon up to 7 o'clock in the evening. The plaintiff boarded the street car at 47th street and Racine avenue. A number of people got on practically at the same time that he did. He says that he got on the back part of the step and when the car started held on with his hands. When asked whether the conductor did anything, he answered: "Yes, he stamped his feet and say, 'Get off' and I got scared and fell off. When the conductor

stamped his foot he was about 3½ feet from me and was looking at me. The car was going pretty fast when I fell off." He further testified that, although he had three cents in his pocket at the time, he thought he "would get on free."

Shortly after the car started plaintiff fell off and was injured. Plaintiff's theory of the accident and why it occurred is supported by the testimony of two witnesses who claim to have viewed it from the sidewalk in front of number 4724 Racine avenue, where one of them—Mrs. Kwiatkowski—resided. The testimony of the latter is that at about four o'clock while she was on the sidewalk in front of her home she saw the plaintiff standing on the back part of the car step holding on with his hands, that the car was just passing where she was; that he had one hand on one grab iron and one on another; that he was facing the conductor; that the conductor stamped his foot and said, "Get off" and after the car had gone a short distance, the plaintiff dropped down. The witness Helen Malokowski, who lived about the fourth house from the plaintiff's home, testified that she saw the conductor "stamp his foot at the boy to get off; that the plaintiff was on the bottom step and had a hold of the grab irons; that she had heard the conductor say to him 'get off'; that after the car had gone about a length and a half the plaintiff fell off." On the other hand, the witness Bates, who got on the car at Racine and 47th street, testified that he saw the plaintiff standing on the car step where the exit was; that he did not remember that he heard the conductor say anything to the boy and that he did not hear any noise from the conductor stamping his foot; that he does not remember that he looked at the conductor's feet. Likewise, the witness Bates, son of the former witness, testified that he got on the car at 47th and Racine with his father, two sisters-in-law and his mother; that he saw plaintiff get on the exit entrance, on the body end; that he had hold

of one rail with both hands; that he did not hear the conductor say to him "get off" nor anything of that kind; that the conductor, so far as he saw, did not stamp his foot at him. The witness Frank Archer testified that he saw the plaintiff on the step of the car holding the rail which is attached to the body of the car with one hand; that he did not hear the conductor say to him "get off" or anything of that kind nor did he see the conductor stamp his feet at him; that he was not looking at the conductor's feet at any time. The witness Ebermeir testified that he saw the plaintiff on the step with his hand on the body handle but did not hear the conductor say "get off" and did not hear or see the conductor stamp his feet; that "he did not see whether he moved or didn't move his feet." The conductor Curran testified that when he first saw the boy he was standing on the step at the exit next to the body of the car; that when he saw him there he reached for the bell to ring for a stop at the next corner, and "as I did he jumped off and I gave three bells"; that he did not say to the boy to "get off" nor stamp his foot.

The evidence shows that after the plaintiff fell from the car he was picked up and taken to a step in front of a house in the neighborhood, and shortly afterwards taken to his home. The chief injury which it is claimed plaintiff sustained as a result of the fall from the car is an affection commonly called "wryneck."

It is contended by the appellant that (1) the verdict is against the manifest weight of the evidence; (2) that the verdict is grossly excessive.

The determination of the facts seems to be chiefly dependent upon the credibility of the witnesses. According to the three witnesses for the appellee the plaintiff was frightened from the car by reason of the conduct of the conductor. On the other hand, the testimony of the five witnesses called by the defendant is, substantially, that, as far as they saw and heard,

the plaintiff did not leave the car as the result of fear inspired by anything said or done by the conductor. There are, of course, many slight inconsistencies and discrepancies in the testimony. As we view the record, however, it was a case peculiarly appropriate to the judgment of a jury.

Are we now, from a close and careful analysis of the record, able reasonably to conclude that the jury were wrong? Of course, whom to believe, we do not know—quite certainly, at least—as well as the jury. The evidence for the defendant was a direct negative of that for the plaintiff. It may be said, of course, that the evidence on the part of the plaintiff was that certain actual visible overt acts on the part of the conductor took place, whereas, the evidence on the part of the defendant—with the exception of the conductor's—was of a negative; that they, the witnesses, did not see or hear certain things, and that, therefore, the testimony on behalf of the plaintiff is more persuasive than that on the part of the defendant and that the discrepancy in the number of witnesses is thus partially balanced. It may be that the conductor stamped his foot and ordered the plaintiff off, and that none of the defendant's witnesses heard or saw what took place. If such were the fact, then the evidence of all the witnesses—excluding that of the conductor—is true and the verdict entirely justified.

As the plaintiff, at the time of the accident, was less than 7 years of age, and as it was the legal duty of the conductor when he saw the child on the step to endeavor reasonably to protect him against his own indiscretion (*Hayes v. Sampsell*, 274 Ill. 258), and as the evidence on the part of the plaintiff—if believed—made out a plain case of negligence on the part of the defendant, and as the evidence for the defendant, in one view of it, at least, was reconcilable, we are of the opinion that the judgment must stand.

It is claimed that the verdict is excessive. The

amount $2,000. The evidence as to the injuries is somewhat confusing. There is no doubt but that the plaintiff was injured by the fall. Immediately after falling he was taken to the steps of a nearby house and then taken home. He was evidently stunned. There is some evidence that for a while he was unconscious. The doctor who attended him the same day that he was injured found him on a table at home "unconscious." He testified, "He had contusion of his head, especially of the back part of the head, and a little cut on the side of the head, and abrasions and contusions of the elbow and knees," that he cleaned up and bandaged the wounds, applied antiseptic solution and ordered cold applications to the head; that when he left him he was "semiconscious." The doctor attended him about ten times. It is the claim on behalf of the plaintiff that as a result of the injuries from the fall his neck became crooked; what is commonly known as wryneck.

There is some confusion in the evidence of the plaintiff, himself, as to the condition of his neck before the fall, but, on the other hand, his mother and father, his aunt and uncle all testified that prior to the fall his neck was all right. The evidence shows that after the fall his neck became crooked and will remain so. In the face of the evidence as to the injuries suffered, we do not feel justified in concluding that the jury erred in fixing the amount of the damages suffered.

As to the declaration, as amended, we think it stated sufficiently the cause of action.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*